## PEOPLE v. SCHMULOWITZ.

(Supreme Court, Appellate Division, First Department.   July 13, 1909.)

FRAUDULENT CONVEYANCES (§ 331*) — CRIMINAL RESPONSIBILITY — OFFENSES — EVIDENCE.

Evidence *held* insufficient to sustain a conviction for alleged secretion and disposition of property with intent to defraud creditors, in violation of Pen. Code, § 587, providing that a person secreting or disposing of his property with such intent shall be guilty of a misdemeanor.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Dec. Dig. § 331.*]

Appeal from Court of Special Sessions of City of New York.

Abe Schmulowitz was convicted of secreting or disposing of his property with intent to defraud his creditors, in violation of Pen. Code, § 587, and he appeals.   Reversed, and a new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Elias B. Goodman, for appellant.
Robert C. Taylor, for the People.

LAUGHLIN, J.  We are of opinion that the evidence is insufficient to sustain the conviction.   Section 587 of the Penal Code, so far as material to the question presented by the appeal, provides as follows:

"A person who, with intent to defraud a creditor, or to prevent any of his property from being made liable for the payment of any of his debts, or levied upon by an execution or warrant of attachment, removes any of his property or secretes, assigns, conveys or otherwise disposes of the same, * * * is guilty of a misdemeanor."

By consent the defendant was tried on two informations at the same time, designated as informations Nos. 1 and 3.   The first charges him with the crime of removing property with the intent to defraud creditors, committed on the 5th day of May, 1908, by unlawfully removing, secreting, assigning, and conveying from his place of business, No. 126 Bleecker street, in the city and county of New York, to certain persons to the district attorney unknown, a case containing 700 pairs of trousers, of the value of $600, being at the time indebted to one Myer Cohen in the sum of $475 and to divers other persons to the district attorney unknown.   The second information, by similar allegations, charges a like crime committed on the same day by removing from his place of business certain cut goods for vests, of the value of $1,200.   Upon the trial it was admitted that on the 5th day of May, 1908, the defendant owed Cohen the sum of $475 for manufactured vests.   No fact is shown necessarily inconsistent with the innocence of the defendant.   It appears that the defendant was engaged in business at No. 126 Bleecker street, but whether as a wholesale or a retail deal-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

er was not shown, nor was the business which the defendant conducts shown with any degree of definiteness; nor was the manner in which he customarily conducted his business shown, from which it might be found that there was anything unusual in the transactions in question. It was shown that between the 21st day of April and the 5th day of May, 1908, the defendant had over $3,000 worth of goods, consisting of trousers and vests, at his place of business. It does not appear whether these goods were in a state of complete manufacture or only partly made up.

It appears that the defendant was suffering financial embarrassment, and that on or about the 21st day of April, 1908, there was a meeting of his creditors; that prior to the meeting he requested Cohen not to attend it, and stated that he would pay the balance owing to Cohen in cash; that defendant's attorney stated to his creditors at this meeting that his assets were worth $5,500, or $5,800, and his liabilities amounted to only $5,000, and the creditors gave him an extension of one year within which to pay his indebtedness to them, but he was to pay 10 per cent. within 60 days; and defendant promised to pay his creditors in full, and stated to them that he wished to remain in business, and also represented that he was engaged to marry a girl, and expected that she would receive a dowry of $2,500; that prior to going to the meeting of the creditors the defendant took the goods in his store from the counters and "put them under the table" and counter, and that after the meeting they were seen on the shelves; that the defendant represented to Cohen that he expected a check from "Butler Bros.," for goods shipped to them on the 18th of April, and that if he got the check he would pay his indebtedness to Cohen. He did not pay this indebtedness in full. It was further shown that on the 4th day of May the defendant paid one Silver $215 and obtained 1,400 pairs of trousers, which it is to be inferred—although the fact does not expressly appear—belonged to the defendant, and on which Silver was doing some work, and took them in a wagon to his store and placed them on "the table" about 4 o'clock in the afternoon; that the next morning three big cases, two of trousers and one of vests, and seven bundles of cut vests, were found in the defendant's store; that these included all of the goods in the store, with the exception of uncut vests of the value of about $400; that the cases were marked "Butler Bros., Jersey City," and the bundles were not marked; that the defendant stated to Cohen that one of these cases was going to "Butler Bros." and the others were going to storage; that the goods in the cases were loaded upon a truck and taken away from the store, and defendant accompanied them, but it does not appear what was done with them; that the vests which were packed up were sent to a tailor in Brooklyn, who had not previously done work for the defendant, to be made up, and that later on the tailor claimed a lien upon them for $75 for work in making them up, which was satisfied by one of the other creditors of the defendant, pursuant to an arrangement with the defendant by which such creditor was to hold them as security for his indebtedness and the amount advanced, and in the early part of June thereafter the defendant redeemed the goods.

It was also shown that on the 6th of May defendant said, in answer to Cohen's request for the money owing to him, that he would pay it next day; that his father was coming, and would bring the money, and he repeated this on the 8th of May; that on the 8th of May Cohen accompanied him to "Butler Bros.," on Broadway, where the defendant stated that he received a check, and he thereupon gave Cohen a check for .$125.30, which was not paid for lack of funds; that on the 12th day of May the defendant, evidently then being pressed by creditors and bankruptcy proceedings being impending, left the city; that in the month of July of that year he and his father paid Cohen $100 on account, and for the balance his father gave notes; that when the $100 was paid the defendant in substance requested Cohen not to "go against him." It further appears that on the 15th day of May a marshal of the city, under a warrant of attachment, levied upon part of the goods remaining in the defendant's store, which consisted of 240 vests, 97 pairs of trousers, and 9 pieces of lining, and sold the same for $163.88, and that another marshal under a like warrant levied upon the balance of the goods and, without selling them, delivered them to the referee—probably the trustee—in bankruptcy.

The purpose for which the goods were shipped to "Butler Bros." does not appear, and, for aught that does appear, both that shipment and the one to Brooklyn may have been made in the utmost good faith and without any intention to defraud the creditors of the defendant. There is no admission proved to have been made by him tending to show that he intended to go out of business or to defraud his creditors; nor is there anything to show that these facts relating to the manner in which he conducted his business show a course of business different from that which he ordinarily followed. It is manifest that the facts could have been more fully brought out. It may be that when they are brought out they will show that the defendant is innocent of the crime charged; but, whether they will show his innocence or guilt, he should not be convicted until some facts are established which lead to the unmistakable inference that he disposed of his goods with intent to defraud his creditors.

It follows that the judgment should be reversed, and a new trial ordered. All concur.